IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Great Valley Publishing,           :
                                    : No. 49 C.D. 2015
                 Petitioner    : Submitted: January 15, 2016
                                      :
             v.                      :
                                      :
Unemployment Compensation   :
Board of Review,                :
                                      :
                 Respondent   :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED: March 8, 2016

Great Valley Publishing Company, Inc., (Employer) petitions for review of the December 19, 2014 order of the Unemployment Compensation Board of Review (Board), which reversed a referee's determination and held that Stephanie A. Fanfera (Claimant) was not ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge or temporary suspension from work for willful misconduct connected with her work.  Willful misconduct has been defined as including: wanton and willful disregard of the employer's interests; a deliberate violation of the employer's rules; a disregard of the standards of behavior that the employer rightfully can expect from its employees; and negligence that manifests culpability, wrongful intent or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and

**(Footnote continued on next page…)**

Claimant worked for Employer as a full-time account executive from November 5, 2012 through May 30, 2014, earning $30,000.00 per year, plus commission. Employer discharged Claimant for violating its policy governing employees' personal use of computers and internet service. The local service center determined that Claimant was ineligible for benefits under Section 402(e). Claimant appealed, and a referee held a hearing on July 24, 2014.

Mara Honicker (Honicker), Employer's vice president, testified that Employer has a policy prohibiting employees' personal use of computers and internet service without advance permission. She stated that Claimant signed Employer's policy and procedures manual, which includes this policy. Reproduced Record (R.R.) at 33a-34a. Honicker explained that employees are allowed to use computers for personal reasons if they ask ahead of time, but, to her knowledge, Claimant never asked for permission. R.R. at 36a.

Honicker testified that discipline for an employee's violation of the internet use policy can include termination: "We have a zero tolerance policy that we can opt to enforce. We could, depending on the level of abuse, we could also issue a written warning." R.R. at 36a. Although Honicker repeatedly referred to the policy as a "zero tolerance" policy, she clarified that Employer does not automatically discharge an employee for using the computer or internet for personal reasons but can exercise discretion to terminate an employee if the policy is abused. R.R. at 37a-38a.

---

**(continued…)**

obligations. *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 632 (Pa. 1976).

2

Honicker stated that Employer monitors employees' computer use by reviewing employees' computer history and by observing their computer screens during the workday. R.R. at 34a. She said that on occasions when misuse was observed, Employer would hold meetings or have conversations to remind employees of the policy. Honicker acknowledged that compliance with the policy was an ongoing concern because employees' regular duties frequently required them to use the internet to visit outside sites. R.R. at 38a.

Peter Burke (Burke), Employer's associate sales manager, confirmed Honicker's testimony that employees are required to get permission before using company computers and internet service for personal reasons, even during breaks or lunch. R.R. at 46a. Burke added that Employer did not have a norm or accepted level of personal use and that disciplinary actions were taken on a case by case basis. R.R. at 54a.

Burke testified that he terminated Claimant for "egregious internet usage." R.R. at 43a. He defined "egregious" as taking up "a vast majority of the day." R.R. at 48a. Burke said that on the Friday afternoon before Claimant's discharge, he saw her shopping on Amazon and told her that "we needed to get back on the phones." R.R. at 43a. He stated that when he reviewed reports later that day, he saw that Claimant had again used the internet for personal reasons; after he consulted with Honicker and another individual, a decision was made to terminate Claimant's employment. R.R. at 43a-45a.

Burke also stated that he had seen Claimant looking at an Equifax credit report. He acknowledged that he sometimes observes other employees doing the same thing and that Employer's response depends on how excessive the employee's internet usage is. R.R. at 47a. Referencing a record of Claimant's

3

internet use on her last day of work, Burke conceded that, with the exception of 5:00 p.m. entries, he could not identify internet usage that preceded or followed his conversation with Claimant. R.R. at 50a.

Claimant testified that Burke did not advise her that she was discharged for violating Employer's computer usage policy but said only that she was no longer needed. R.R. at 57a-58a. Claimant stated that she received Employer's handbook and knew of its policy prohibiting employees' personal use of computers and internet service. R.R. 65a. According to Claimant, however, employees commonly used Employer's computers and internet for personal purposes, and Employer was aware of this but did not consistently enforce its policy. R.R. at 60a. Claimant noted that Burke would walk around the work area and employees made no effort to hide their screens from his view. R.R. at 61a.

The referee found that: Employer's policy prohibits the use of computers or internet for personal reasons without prior approval; Employer was aware that employees were using the internet for personal reasons; and Employer took no action unless the use was excessive. While noting Employer's inconsistent enforcement of its computer and internet policy, the referee found that Claimant violated that policy without good cause. Accordingly, the referee affirmed the local service center's decision, and Claimant appealed to the Board.

The Board found as follows:[2]

---

[2] In unemployment compensation proceedings, the Board is the ultimate fact-finder, empowered to determine the credibility of witnesses and resolve conflicts in evidence; the Board's findings are conclusive on appeal where they are supported by substantial evidence. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *American General Life and Accident Insurance*
**(Footnote continued on next page…)**

4

1. [Employer] employed the claimant from November 5, 2012, through May 30, 2014, finally as a full-time account executive earning $30,000.00 per year, plus commission.

2. The claimant knew that the employer had a policy prohibiting using its computers and Internet for personal purposes.

3. The employer knew that employees, including the claimant, commonly used its computers and Internet for personal purposes, but did not consistently enforce its policy.

4. The claimant typically used the employer's computer and Internet for personal purposes about twenty minutes per day, sometimes instead of taking a smoking break.

5. Around 3:00 p.m. on May 30, 2014, the employer's associate sales manager saw the claimant using Amazon.com and redirected her to use her phone to meet deadlines instead of visiting Amazon.com.

6. The claimant returned to work, but used the Internet for personal purposes for approximately ten minutes after 5:00 p.m.

7. The employer discharged the claimant for personal use of its computer and Internet.

Board's Finding of Fact Nos.1-7. The Board stated that Employer's policy was only nominally "zero tolerance" and that Employer tolerated employees' violations of the policy so long as their use of computers and internet service was

**(continued…)**

*Company v. Unemployment Compensation Board of Review,* 648 A.2d 1245, 1248 (Pa. Cmwlth. 1994).

5

not "excessive." After determining that Employer did not consistently and uniformly enforce its policy, the Board concluded:

> [Claimant] never received a written warning for using the Internet and the Board would not even classify the manager's statement to [Claimant] as being a warning, but more of a redirection to focus on using the phone to meet a deadline, not to never again use the Internet. Following this redirection, [Claimant] did not again use the Internet for another two hours, with only ten minutes of usage at the end of the workday. [Claimant] credibly testified that she believed this minimal usage to be permissible under the policy, as enforced. Considering [Employer's] unenforced policy and the absence of a warning, the Board cannot conclude that [Claimant's] continued use of the Internet was excessive and that she knew it to be excessive. Therefore, benefits may not be denied.

Board's decision p.2. The Board reversed the referee's decision and held that Claimant was not ineligible for benefits due to willful misconduct.

On appeal to this Court,[3] Employer argues that the Board erred in holding that Claimant's actions did not rise to the level of willful misconduct. Employer asserts that our decision in *Pettyjohn v. Unemployment Compensation Board of Review*, 863 A.2d 162, 165 (Pa. Cmwlth. 2004), is controlling and compels the conclusion that Claimant's use of the internet without permission was willful misconduct.

Initially we note that the burden of proving willful misconduct rests with the employer. *Guthrie v. Unemployment Compensation Board of Review*, 738

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Procyson v. Unemployment Compensation Board of Review*, 4 A.3d 1124, 1127 n.4 (Pa. Cmwlth. 2010).

6

A.2d 518, 521 (Pa. Cmwlth. 1999). Where the allegation of willful misconduct is based on a violation of the employer's work rule, the employer must establish the existence of a reasonable work rule and the claimant's violation of the rule. *Williams v. Unemployment Compensation Board of Review*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007). If the employer makes that showing, the burden shifts to the claimant to show good cause for her conduct. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013).

Additionally, our courts have consistently recognized that in willful misconduct cases, the issue is not whether the employer had the right to discharge the employee for the particular conduct, but rather whether the Commonwealth is justified in reinforcing that decision by denying benefits under the Law. *See, e.g., Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. 1976); *Pennsylvania State Police v. Unemployment Compensation Board of Review,* 578 A.2d 1360, 1361 (Pa. Cmwlth. 1990).

Employer contends that Claimant's conduct was more egregious than the employee's internet usage that was held to be willful misconduct in *Pettyjohn*. In August 2003, the employer in *Pettyjohn* reminded all employees that they were permitted to access the internet for personal reasons only during established breaks and lunch hours. Staff also were reminded that they were to speak to a supervisor if they were short on work. All employees, including the claimant, were periodically reminded of this policy after the August 2003 meeting. In addition, the employer's handbook provided for immediate discharge where an employee refused to obey a direct instruction from a supervisor. The claimant was discharged in November 2003 for accessing a variety of internet sites during work

hours in violation of direct instructions from her supervisor. In her application for benefits, the claimant said she did this because work was slow.

The Board determined that the claimant knew or should have known that accessing the internet during her work hours violated the employer's policy and that such a violation could jeopardize her employment. On appeal, we noted the claimant's admissions that she was aware that the employer's policy prohibited use of the internet for personal reasons during work hours and required employees who ran out of work to seek additional work from a supervisor. Affirming the Board's decision, we stated that the Board "properly determined that [the claimant] violated a clearly established policy and that her behavior constituted willful misconduct." *Pettyjohn*, 863 A.2d at 165.

Employer's contention that *Pettyjohn* is dispositive in this matter relies, in part, on facts different from those found by the Board as well as Employer's mischaracterization of the Board's decision as involving a disparate treatment claim. More important, the facts in *Pettyjohn* are significantly distinguishable from the facts of this appeal. In *Pettyjohn*, the Board found an established policy that was repeatedly communicated to all employees and that the claimant knew or should have known that a violation of the policy would have consequences. In contrast, Employer's witnesses confirmed Claimant's testimony that the prohibited behavior was, in fact, routinely tolerated.

We agree with the Board that where Employer admittedly tolerated violations of its policy governing employees' internet use, Employer failed to establish that Claimant's use of the computer and internet on May 30, 2014, amounted to willful misconduct under Section 402(e). *See Penn Photomounts, Inc.*

8

*v. Unemployment Compensation Board of Review,* 417 A.2d 1311 (Pa. Cmwlth. 1980).

The employer in *Penn Photomounts* had a formal, written policy concerning the procedure employees were to follow when reporting absences. Under the policy, an employee taking sick leave or an unexcused absence was required to notify the employer by reporting to the office by 9:00 a.m. on the first day out. Copies of the policy were posted throughout the office and were distributed to all employees individually. The claimant was discharged for repeated unexcused absences and for failing to follow the employer's established reporting procedure.

The local job center granted the claimant's application for benefits and the employer appealed. At a hearing before a referee, the claimant acknowledged that she was aware of the employer's formal policy for reporting absences. She further admitted that she had not followed that written policy on a number of occasions but instead, had called coworkers in the building in which she worked, informed them that she was ill and would not be coming to work, and asked them to relay the message to someone in a supervisory capacity.

The claimant further testified that the informal manner in which she reported her absences was accepted practice at the company. She explained that during past absences she had always called her coworkers rather than the main office. The claimant said that no one ever told her to call the main office instead of the other building, adding that she took calls in the same building from other employees reporting their absences and passed on their messages to a supervisor. A former coworker corroborated that portion of the claimant's testimony, stating

9

that she had never been reprimanded for not calling the office when she reported an absence.

The employer's plant supervisor testified that although the employees' practice of reporting absences by calling other employees rather than the main office was not accepted procedure, the employer tolerated that informal practice for short-term absences. He described a short-term absence as being from one to two days and a long-term absence as being a week or more; however, he stated that the employer had no formal policy differentiating between short-term and long-term absences. He also acknowledged that during previous absences the claimant had called her coworkers rather than the main office and that he had received at least one message concerning her absence during the period at issue.

The employer's president testified that company regulations were implemented and enforced in an informal and loose manner unless they were abused by employees, in which case they were enforced firmly.

A referee found the claimant ineligible for benefits under Section 402(e) of the Law, but the Board reversed. After resolving conflicts in testimony in the claimant's favor, the Board found that: the claimant always reported her absences by calling her coworkers, who relayed those messages to the employer; when the claimant reported her absence due to illness she followed past practice of calling a coworker; the coworker relayed the message to the employer; and the employer discharged the claimant for not reporting her absence directly to the office. Based on those findings, the Board concluded that the claimant's conduct in reporting in her absence in her usual manner was not willful misconduct.

On appeal in *Penn Photomounts*, we affirmed the Board's decision. Relying on our prior decision in *Unemployment Compensation Board of Review v.*

10

*Blouse*, 350 A.2d 220, 222 (Pa. Cmwlth. 1976),[4] we observed that although the employer had a formal policy for reporting absences, the employer was aware that its employees followed a less formal practice to report absences and tolerated the less formal reporting practice. Consequently, we concluded that while the employer had the right to discharge the claimant for her conduct, her actions did not constitute willful misconduct supporting a denial of benefits.

In material respects, the circumstances in this case are similar to those in *Penn Photomounts*. Employer acknowledged that it tolerated employees' violation of the computer/internet policy so long as their use was not excessive; Employer's policy did not define "excessive" or differentiate between permissive and excessive computer usage; and Claimant credibly testified that she believed her minimal usage was permissible under the policy as Employer enforced it. Based on the facts as found by the Board, we also conclude that Claimant's actions did not amount to willful misconduct under Section 402(e) of the Law. *Penn Photomounts*.

Accordingly, we affirm the Board's order.

MICHAEL H. WOJCIK, Judge

---

[4] In *Blouse*, we held that a claimant was not ineligible for benefits due to willful misconduct where the evidence established that she followed procedures commonly accepted by the employer.

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Great Valley Publishing,

                Petitioner

         v.

Unemployment Compensation
Board of Review,

             Respondent

: 
: No. 49 C.D. 2015
: 
: 
: 
: 
: 
: 
: 
: 
: 
: 

### O R D E R

AND NOW, this $\underline{8^{th}}$ day of <u>March</u>, 2016, the order of the Unemployment Compensation Board of Review, dated December 19, 2014, is affirmed.

_____
MICHAEL H. WOJCIK, Judge