## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Emmitt A. Banks,                                  :
                          Petitioner               :
                                                   :
                   v.                              :
                                                   :
Unemployment Compensation                          :
Board of Review,                                   :      No. 2711 C.D. 2015
                          Respondent               :      Submitted: August 19, 2016


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: November 1, 2016


         Emmitt A. Banks (Claimant) petitions this Court, pro se, for review of

the Unemployment Compensation (UC) Board of Review's (UCBR) October 8, 2015

order affirming the Referee's decision denying him UC benefits under Section 402(b)

of the UC Law (Law).[1]  Essentially, the issue before the Court is whether the UCBR

erred by denying Claimant UC benefits under Section 402(b) of the Law.[2]  After

review, we affirm.

_____

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(b) (relating to voluntary separation without cause of a necessitous and compelling nature).
   [2] Claimant's Statement of the Questions Involved listed in his brief are as follows:

         1. Who originally hired [Claimant]?
         . . . .
         2.  Is a company allowed to threaten an employee with a reduction in
         [his] hourly rate for hours already worked?
         . . . .
         3.   Is [Claimant] covered under the Worker Adjustment and
         Retraining Notification Act[, 23 U.S.C. §§ 2101-2109,] (WARN)[?]
         . . . .

Claimant was employed by staffing service Tristar Staffing Inc. (Tristar) from January 2015 through May 28, 2015. Tristar assigned Claimant to work at Transicoil until May 28, 2015, earning $14.00 per hour. Transicoil advised Claimant and other employees that, due to the company closing, their last work day would be May 28, 2015. Thereafter, Salter Industries offered Claimant a position contingent upon a negative drug test result. On May 14, 2015, Claimant verbally notified Tristar that he was terminating his employment effective the last day of his Transicoil job. On May 28, 2015, Claimant terminated his employment with Tristar. On June 2, 2015, Claimant took the Salter Industries' drug/alcohol test, and thereafter sought to contact Salter Industries, but his calls were not returned.

Claimant applied for UC benefits. On July 8, 2015, the Allentown UC Service Center ruled Claimant ineligible for benefits under Section 402(b) of the Law.[3] Claimant appealed and a Referee hearing was held. On August 14, 2015, the Referee affirmed the UC Service Center's determination that Claimant was ineligible for UC benefits under Section 402(b) of the Law.[4] Claimant appealed to the UCBR. On October 8, 2015, the UCBR adopted the Referee's findings and conclusions, and affirmed the Referee's decision. Claimant appealed to this Court.[5]

---

Claimant Br. at 6. Issues 2 and 3 were not raised before the Referee or the UCBR and thus we are precluded from addressing them. *See Chapman v. Unemployment Comp. Bd. of Review,* 20 A.3d 603, 611 (Pa. Cmwlth. 2011) ("[T]his allegation of error was not raised either before the Referee or before the [UCBR]. As a result, this allegation of error has been waived for purposes of appeal, and will not be addressed for the first time by this Court in this appeal."). Issue 1 is subsumed in the issue of whether the UCBR erred by determining Claimant quit without a necessitous and compelling reason and will be addressed therein.

[3] Because the UC Service Center also determined that Claimant's failure to report that he voluntarily quit from Tristar resulted in a fault overpayment under Section 804(a) of the Law, 43 P.S. § 874(a), a penalty was assessed under Sections 401(b) and (c) of the Law, 43 P.S. § 801(b),(c).

[4] The Referee modified the UC Service Center's additional determinations, ruling that Claimant had received a non-fault overpayment under Section 804(b) of the Law, 43 P.S. § 874(b) and, thus, reversed the UC Service Center's penalty assessment.

[5] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by

2

Initially,

> [a] claimant who voluntarily quits his employment bears the burden of proving that necessitous and compelling reasons motivated that decision.  In order to establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve [his] employment.

*Middletown Twp. v. Unemployment Comp. Bd. of Review*, 40 A.3d 217, 227-28 (Pa.

Cmwlth. 2012) (citations omitted).  Further,

> '[w]hether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court.'  *Warwick v. Unemployment Comp*[.] [*Bd.*] *of Review,* 700 A.2d 594, 596 (Pa. Cmwlth. 1997).  'It is well-established that . . . '**the receipt and acceptance of a firm offer of employment does constitute termination for cause of a necessitous and compelling nature**.' '  [*Twp.*] *of N*[.] *Huntingdon* [*v. Unemployment Comp. Bd. of Review*]*,* 450 A.2d [768,] 769 [(Pa. Cmwlth. 1982)] (quoting *Steinberg v. Unemployment Comp*[.] [*Bd.*] *of Review, . . .* 383 A.2d 1284, 1286 ([Pa. Cmwlth.] 1978)).  '**The offer of employment, however, must be definite**,' *Id.* at 769 (citing *Baron v. Unemployment Comp*[.] [*Bd.*] *of Review, . . .* 384 A.2d 271, 272 ([Pa. Cmwlth.] 1978)), *and* 'the claimant must act prudently with regard to his employer.'  *Id.* (citing *Unemployment Comp*[.] [*Bd.*] *of Review v.* [*Pa.*] *Power* [*&*] *Light Co., . . .* 351 A.2d 698, 699 ([Pa. Cmwlth.] 1976)).  '[**T**]**he mere possibility of obtaining another job is insufficient to establish that employment was terminated for good cause**.' *Id.*  In addition, although 'the claimant may have personal, economic, or career reasons for making h[is] decision to leave the employer . . . that does not constitute a necessitous and compelling cause for

---

substantial evidence.  Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

voluntarily quitting.' *Empire Intimates* [*v. Unemployment Comp. Bd. of Review,*] 655 A.2d [662,] 665 [(Pa. Cmwlth. 1995)].

*Solar Innovations, Inc. v. Unemployment Comp. Bd. of Review,* 38 A.3d 1051, 1056-57 (Pa. Cmwlth. 2012) (emphasis added).

With regard to Claimant's new job, he testified:

R [Referee] And you last worked on May 28th. As of May 28th was -- did [Salter Industries] give you a job offer?

C [Claimant] Yes. And I had to go take the drug test and everything.

R Okay. Now, this job offer that they gave you did they tell you what job you'd be doing?

C Well, I applied for general labor.

R Okay. And did -- was it your understanding is [sic] that's what you would do?

C Yes, until they found out -- they put me in one place and then they said if I do good then they'll advance me to other places.

R Okay. Did they tell you how much you'd be paid?

C He said between 13 and 14, because he asked me how much I was making over at Transicoil.

R Did he tell you when you would start?

C He said as soon as I -- after I take the drug test.

R After [the] drug test[?]

C Drug and nicotine test.

R Nicotine test?

C Yeah. I . . .

R Okay. And did he tell you this was going to be a full-time position?

C Yes.

4

R Okay.  **So, at the time that you stopped working at --
that you -- at the time that you resigned from [Tristar]
effective at the end of your employment with Transicoil
had you taken the drug test yet for the new job**?

C **No**.

R When did you -- did you ever take that?

C Yes.

R When did you take it?

C June 2nd.

Notes of Testimony, August 13, 2015 (N.T.) at 7-8 (emphasis added).

Here, although Claimant maintains that he had a firm job offer, it was contingent upon a negative drug test, which test he did not take until after he separated from Tristar.  Further, "[C]laimant's own testimony makes [no] mention of the . . . hours or other conditions of employment allegedly offered."  *Baron v. Unemployment Comp. Bd. of Review,* 384 A.2d 271, 273 (Pa. Cmwlth. 1978). Moreover, Claimant testified that although he passed the drug test, he had no further contact with Salter Industries, as they never called him and never returned his calls. *See* N.T. at 9.  Thus, "[t]he record shows . . . that [Claimant] did not have a firm offer of employment with a definite date of hire."  *Eckenrod v. Unemployment Comp. Bd. of Review,* 325 A.2d 320, 322 (Pa. Cmwlth. 1974).

The UCBR concluded:

In the present case, [C]laimant testified that he voluntarily terminated his employment with [Putative Employer] because he expected to begin a new job with employer, Salter Industries.  However, [C]laimant testified that he was informed by the new employer that he would be required to pass a drug/alcohol test, and he had not yet taken the test at the time that he terminated his employment with [Putative Employer].  Furthermore, [C]laimant failed to provide credible testimony regarding the exact pay rate, or start date with the new employer.  Based upon these facts, the Referee concludes that [C]laimant did not have a firm job offer with

5

the new employer at the time that he voluntarily terminated his employment with [Putative Employer]. As such, [C]laimant did not have a necessitous and compelling reason for voluntarily terminating his employment in accordance with the Law.

Referee Dec. at 2.

"This Court's review of a decision by the [UCBR] does not permit it to reweigh the evidence or substitute its own findings for those made by the [UCBR]." *Chartiers Cmty. Mental Health & Retardation Ctr. v. Unemployment Comp. Bd. of Review,* 134 A.3d 1165, 1173 (Pa. Cmwlth. 2016). The law is well established that:

> [T]he [UCBR] is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made.

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Great Valley Pub. v. Unemployment Comp. Bd. of Review,* 136 A.3d 532, 535 n.2 (Pa. Cmwlth. 2016). We discern no error in the UCBR's conclusion which is supported by substantial record evidence.

Claimant also argues that since Transicoil rather than Tristar was his employer, he is entitled to UC benefits because his employment ended through no fault of his own. However, the UCBR found, in relevant part:

> 1. [C]laimant was employed with [Tristar], a staffing service from January of 2015 to May 28, 2015, his last day worked.

> 2. [C]laimant was assigned to . . . Transicoil until May 28, 2015, earning $14.00 per hour.

6

. . . .

4. On May 14, 2015, [C]laimant gave verbal notice to . . . [Tristar] that he was voluntarily terminating his employment effective the last day of the assigned job, May 28, 2015.

. . . .

6. On May 28, 2015, [C]laimant voluntarily terminated his employment with [Tristar], also the last day of his assigned employment with Transicoil.

Referee Dec. at 1. This Court has held:

> The [UCBR's] findings are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support those findings. *Taylor v. Unemployment Comp. Bd. of Review,* . . . 378 A.2d 829 ([Pa.] 1977). Of particular import, '[f]indings of fact made by the [UCBR], which are not *specifically* challenged, are conclusive upon review.' *Steinberg Vision Assoc. v. Unemployment Comp. Bd. of Review,* . . . 624 A.2d 237, 239 n. 5 ([Pa. Cmwlth.] 1993) (emphasis added).

*Hessou v. Unemployment Comp. Bd. of Review,* 942 A.2d 194, 198 (Pa. Cmwlth. 2008).

> Here, Claimant testified:
>
> R Who was your last Employer?
>
> C Transicoil.
>
> R Transit?
>
> C Transicoil, T-R-A-N-S-I-C-O-I-L.
>
> R Now, **was that through** [**Tristar**]?
>
> C **Yes**.
>
> R Okay. So, I'm going to break this into two pieces, okay? So, [Tristar] is a staffing service.
>
> C Yeah.
>
> R **So, when did you start working for** [**Tristar**]?

7

C **Was 2000 -- let me see.  January of 2015**.

R Okay.  **And, your last [employer], was it Transicoil**?

C **Yes**.

N.T. at 3-4 (emphasis added).  With respect to whether he notified Tristar that he was quitting, Claimant testified:

> R Okay.  All right.  So, [Tristar], were they aware that your position was ending with Transicoil?
>
> C I think so.
>
> R Did you speak with them at all?
>
> C **I never called** [**Tristar**].
>
> R Why not?
>
> C **I didn't really like working for them**, so if I would be late for work or absent from work I always called Transicoil.
>
> R Okay. So, when you separated from Transicoil did you call [Tristar] to assure that they were aware that your assignment had ended?
>
> C I had called in one time and that's when I found out about the -- my Unemployment worksheet -- I mean my timesheet, because after that when I found it wasn't working [sic] and that the plant was closing I went to go look for another job.
>
> R Okay.  So, when did you speak with them?
>
> C Let's see.
>
> R Was it shortly . . .
>
> C I would say maybe May 14th.
>
> R Okay.  Shortly before they closed?
>
> C Yes.

R You spoke with [Tristar]. And did they indicate in some way that they were aware that your assignment was ending?

C No. I just . . .

R Did you speak with them?

C I just gave -- I just called them and I gave them a head's up because on the paperwork . . .

R So, you told them it was closing?

C Yes.

R Okay. So, they were aware based upon you telling them that it was closing.

C **Well, I didn't know they was** [sic] **closing. I told them I was going -- I had another job**, because they said if I don't give them two weeks' notice that they can knock my rate down to minimum wage.

R **So, you were quitting from** [**Tristar**]?

C **Yes**.

R Okay. **So, you told them you were quitting**?

C **Yes. I had a job -- another job**.

R Okay. So, you gave them a letter -- **you gave a verbal resignation**?

C **Yes**.

N.T. at 6-7 (emphasis added). This Court has held: "In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence." *Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

9

Given the facts as found by the UCBR, and viewing the evidence in the light most favorable to Tristar, as we must, we find that substantial evidence supports the UCBR's finding that Tristar was Claimant's employer. Because Claimant voluntarily terminated his employment with Tristar without a necessitous and compelling reason, the UCBR properly determined that he was not entitled to UC benefits.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Emmitt A. Banks,                                    :
                        Petitioner                  :
                                                    :
            v.                                      :
                                                    :
Unemployment Compensation                           :
Board of Review,                                    :       No. 2711 C.D. 2015
                        Respondent                  :

# O R D E R

AND NOW, this 1st day of November, 2016, the Unemployment Compensation Board of Review's October 8, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge