# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher C. Segear,           :
             Petitioner    :
                          :
      v.                :  No. 605 C.D. 2016
                          :  Submitted: November 4, 2016
Unemployment Compensation   :
Board of Review,           :
             Respondent  :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED: March 24, 2017**

Petitioner Christopher C. Segear (Claimant) petitions for review of a decision and order of the Unemployment Compensation Board of Review (Board). The Board reversed the decision of a Referee and determined Claimant ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] relating to willful misconduct. We affirm the Board's order.

Claimant filed for unemployment compensation benefits on September 13, 2015, after his employment ended as a shuttle loom fixer for Bally Ribbon Mills, Inc. (Employer). The Allentown Unemployment Compensation Service Center (Service Center) issued a notice of determination finding Claimant

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

ineligible for unemployment compensation benefits under Section 402(e) of the Law. (Certified Record (C.R.), Item No. 4.) Claimant appealed, and a Referee conducted an evidentiary hearing. (C.R., Item No. 8)

Robert Costello (Costello), Employer's corporate vice president, testified on behalf of Employer that Claimant voluntarily left his position as a shuttle loom fixer. (*Id.* at 11.) Costello testified regarding Employer's attendance policy which states:

> Any employee absent from work three (3) or more consecutive days without notifying his/her Department Head/Supervisor or Manager will be considered self-terminated.

(*Id.* at 14.) Costello testified that Claimant signed a document titled "New Employee Checklist" which notifies new employees of the attendance policy. (*Id.*) Costello further testified that Claimant was absent from work from August 31, 2015, to September 4, 2015, and did not notify anyone that he would be absent. (*Id.* at 14-15.) Thus, according to Costello, Employer considered Claimant "self-terminated." (*Id.* at 11.) Finally, Costello testified that while he could not provide an exact date, sometime shortly after September 4, 2015, Employer sent Claimant a letter informing him that he no longer had a position with Employer. (*Id.* at 13.)

Jason Whitesell (Whitesell), Claimant's immediate supervisor, testified on behalf of Employer that Claimant was absent from work in the weeks leading up to August 31, 2015, and provided documentation from a doctor for that time period. (*Id.* at 17-18.) Whitesell also testified that Claimant sent a text message to him, advising Whitesell that he would return to work on August 31, 2015. (*Id.* at 17.) During the text message exchange, Whitesell informed Claimant that he would need a work release from his doctor in order to

2

return to work. (*Id.* at 19.) Claimant never returned to work on or after August 31, 2015. (*Id.* at 20.)

Claimant presented testimony that alluded to him going through a mentally and emotionally trying time prior to the end of his employment. Claimant acknowledged that he was aware of Employer's attendance policy. (*Id.* at 26.) He testified that he attempted to be treated for mental illness at various treatment centers with little luck, seemingly due to his insurance. (*Id.* at 27.) Regarding the end of his employment, Claimant testified, "I didn't walk in and physically say I quit . . . I just got so frustrated during the process, I lost track of everything." (*Id.* at 24.) Claimant testified that given the adversity he was experiencing, he desired a medical leave of absence. (*Id.*) He faxed to Employer a doctor's note which released him to return to work on August 31, 2015. (*Id.* at 26-27.) He testified that when he requested medical leave, Whitesell informed him that he needed to fill out documentation with Employer. (*Id.* at 26.) Claimant testified that he relied on his mother to handle the medical leave documentation. (*Id.* at 38.)

Following the evidentiary hearing, the Referee issued a decision, affirming the Service Center's determination while modifying the grounds of ineligibility. In a decision dated November 6, 2015, the Referee determined Claimant ineligible for unemployment compensation benefits under Section 402(b) of the Law,[2] because he voluntarily left his position without cause of a necessitous and compelling nature. (C.R., Item No. 9.)

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's unemployment is due to voluntarily leaving **(Footnote continued on next page…)**

3

Claimant appealed the Referee's order to the Board, which affirmed the Referee's decision with modification. By order dated March 4, 2016, the Board determined, as the Service Center did, that Claimant was ineligible under Section 402(e) of the Law, relating to willful misconduct. The Board specifically found:

1. The claimant was last employed as a full time shuttle loom fixer by the employer, Bally Ribbon Mills, Inc., from November 14, 2007, through August 2015, at a final rate of pay of $25.00 per hour, and his last day at work was August 6, 2015.

2. The employer had a policy whereby it considered a no show/no call for three consecutive days a self-termination.

3. The claimant knew or should have known about the employer's policies.

---

**(continued…)**

work without cause of a necessitous and compelling nature. Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Wasko v. Unemployment Comp. Bd. or Review*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985). A claimant who voluntarily quits her employment bears the burden of proving that necessitous and compelling reasons motivated that decision. *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). A necessitous and compelling cause for voluntarily leaving employment is one that "results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Mercy Hosp. of Pittsburgh v. Unemployment Comp. Bd. of Review*, 654 A.2d 264, 266 (Pa. Cmwlth. 1995). Generally, in order to establish cause of a necessitous and compelling nature, a claimant must establish that: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) like circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008).

4

4. The claimant had been excused from work up until August 28, 2015, based on a doctor's note that he had provided to the employer.

5. On August 28, 2015, the claimant texted the employer that he would return to work on Monday, August 31, 2015.

6. The claimant was scheduled to work on August 31, September 1, 2, 3, and 4, 2015.

7. The claimant was absent from work on August 31, September 1, 2, 3, and 4, 2015.

8. The claimant did not call off pursuant to the employer's policy on August 31, September 1, 2, 3, and 4, 2015.

9. The claimant did not communicate with the employer about his mental health issues or his absences after August 31, 2015.

10. The claimant abandoned his job on or about August 31, 2015, because he needed time to "fix himself, to heal and just start over fresh."

11. The employer considered the claimant to have voluntarily quit his employment and sent him a separation letter in the mail sometime after September 4, 2015, discharging the claimant because of his violation of policy.

(C.R., Item No. 15.) The Board reasoned:

> In this case, the employer had a policy whereby it considered employees who did not notify it and did not report for a scheduled shift for three days in a row to have voluntarily terminated their employment. The claimant knew or should have known about the policy as it was contained in the company handbook, of which the claimant had a copy. The employer's policy requiring attendance at work and notification of an upcoming absence was reasonable.

5

The claimant was scheduled to work on August 31, September 1, 2, 3, and 4, 2015. The claimant neither notified his employer that he would be absent for those days, nor did he appear for work on those days. Thus, the claimant was in violation of the employer's policy. The employer terminated the claimant for his multiple no call/no shows. The claimant testified that he had mental health issues for which he sought treatment and that he needed time to fix himself and start over fresh, which is why he did not return to his job. The claimant did not demonstrate why he could not and did not notify the employer of his impending absences. The claimant committed willful misconduct and did not prove good cause for his actions.

Also, even with the employer's policy, not appearing for work for five (5) consecutive days and not notifying the employer about the absences is conduct that is so contrary to the interest of the employer that here it rises to the level of willful misconduct.

Much of the hearing focused on the claimant's prior medical issues and absences; however, those issues are not relevant here. Neither party showed that those issues had an effect on the claimant's ability to follow the call off policy.

In the alternative, even if the case were decided under Section 402(b) of the Law, a denial is warranted. By his actions of not appearing for work for five (5) straight days on which he was scheduled, and not notifying the employer that he would be absent, the facts could be treated as a voluntary separation, and one without necessitous and compelling reason.

(*Id.*)

Claimant now petitions this Court for review of the Board's order. On appeal,[3] Claimant argues that the Board erred in determining that he was ineligible

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are **(Footnote continued on next page…)**

for unemployment compensation benefits under Section 402(e) of the Law. He contends that the Board erred in failing to conclude that he had good cause for his actions. Specifically, Claimant now argues for the first time that his mother called to notify Employer that he was having health issues and seeking treatment. Claimant alleges that he relied on his mother to inform Employer and acquire any paperwork necessary for a family medical leave. Based on his belief that his mother would take care of what needed to be done, Claimant argues that he had good cause not to notify Employer of his continuing absences after August 28, 2105.

Claimant does not appear to dispute that Employer met its burden to establish that he engaged in willful misconduct by violating Employer's attendance policy by failing to attend work without notice to Employer.[4] Once an employer

---

**(continued…)**

supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).

The burden of proving willful misconduct rests with the employer. *Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Where an employer seeks to prove willful misconduct by showing that the claimant violated the employer's rules or policies, the employer must demonstrate (1) the existence of the rule or
**(Footnote continued on next page…)**

7

meets its burden to establish willful misconduct, the burden shifts to the claimant to show good cause for his failure to comply with the rule or policy. *Great Valley Publ'g v. Unemployment Comp. Bd. of Review*, 136 A.3d 532, 536 (Pa. Cmwlth. 2016). A claimant has good cause if his actions are reasonable and justifiable under the circumstances. *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). Whether an employee's conduct constitutes willful misconduct and whether a claimant has proved good cause are questions of law subject to our review. *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011, 1015-16 (Pa. Cmwlth. 2008).

In this case, the Board did not err in concluding that Claimant failed to establish good cause for his actions. Claimant missed five days of work without calling Employer, despite knowing that these unexcused absences would result in the loss of his job. At the hearing, Claimant did not provide any reason that he was unable to at least notify Employer that he would be absent, with the exception that he was embarrassed and still attempting to seek treatment.[5] Claimant did not provide testimony suggesting that the search for treatment prevented him from notifying Employer. We conclude, therefore, that Claimant did not meet his

---

**(continued…)**

policy and (2) that the claimant violated it. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008). Moreover, the employer must establish that the claimant's actions were intentional or deliberate. *Tongel v. Unemployment Comp. Bd. of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985).

[5] In his brief, Claimant suggests that his mother notified Employer. Claimant, however, did not testify before the Referee that his mother contacted Employer, and we may not consider facts not contained in the record.

burden of demonstrating good cause for his failure to comply with the attendance policy.

Accordingly, we affirm the order of the Board.[6]

_____
P. KEVIN BROBSON, Judge

_____

[6] We recognize that whether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment. *Key v. Unemployment Comp. Bd. of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996). Claimant, however, does not contend that the Board erred in analyzing his claim under Section 402(e) of the Law, relating to willful misconduct, as opposed to Section 402(b) of the Law, relating to voluntary resignation. The Board, in determining Claimant ineligible for benefits under Section 402(e), explained that if it were to analyze this matter under Section 402(b), it would reach the same result. Were we to analyze this matter under Section 402(b), we, too, would reach the same result. As noted by the Board, Claimant did not demonstrate why he could not and did not notify Employer of his impending absences. Claimant, therefore, cannot establish that he acted with ordinary common sense and made reasonable efforts to preserve his employment. *See Procito*, 945 A.2d at 264.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Christopher C. Segear,  :
                        Petitioner  :
                                    :
            v.                      :    No. 605 C.D. 2016
                                    :
Unemployment Compensation           :
Board of Review,                    :
                        Respondent  :

# **O R D E R**

AND NOW, this 24th day of March, 2017, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge