IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pinnacle Health Hospitals,           :
                    Petitioner       :
                                     :
            v.                       :
                                     :
Unemployment Compensation            :
Board of Review,                     :    No. 1277 C.D. 2019
                    Respondent       :    Submitted: May 11, 2020


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED:  June 5, 2020


Pinnacle Health Hospitals (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) August 20, 2019 order affirming the Referee's decision granting David J. Lisco (Claimant) UC benefits under Section 402(e) of the UC Law (Law).[1]  The sole issue before this Court is whether the UCBR erred by granting Claimant UC benefits under Section 402(e) of the Law.  After review, we reverse.

Employer employed Claimant as a full-time Clinical Staff Pharmacist from December 5, 2005, until August 24, 2017.  Employer maintains an Electronic Communication Media policy (ECM Policy), which provides that "occasional, limited personal use of non-work time of [Employer's] System Internet/E-Mail connection is allowed when it does not interfere with the efficiency of the employee or the business of [Employer]."  Reproduced Record (R.R.) at 76a.  Claimant was

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to discharge from work for willful misconduct).

aware of the ECM Policy. *See* R.R. at 61a. Employer interprets the ECM Policy to prohibit use of the internet during work time. The ECM Policy further advises, "[e]mployees who use such media for private, non-job-related purposes do so at their own risk." R.R. at 76a. The ECM Policy provides for corrective action, up to and including termination of employment. *See id.*

On July 6, 2017, Employer suspended Claimant for purportedly changing a medication prescription for a patient without a physician's approval. On August 10, 2017, Employer issued Claimant an Action Plan. The Action Plan sought to have Claimant minimize medication errors and to use his time more efficiently. Employer warned Claimant that there was a concern with the amount of time he spent on the internet. Claimant occasionally used the internet for personal use, but only in between orders or when work was slow. On August 17, 2017, Employer sought a report from its Information Technology (IT) department to investigate Claimant's internet usage. On August 18, 2017, Claimant committed a medication error. Employer's IT department provided Employer with reports for the weeks of August 10 through 17, 2017, and August 17 through 22, 2017 (Reports). The Reports include internet sites not actually accessed by the user, but which are embedded advertisements. Social media sites are blocked, but Facebook was displayed on the Reports as being accessed. After reviewing the Reports, Employer discharged Claimant on August 24, 2017, for his purported use of non-work-related internet during work time. Thereafter, Claimant applied for UC benefits.

On October 5, 2017, the Harrisburg Overflow Center (UC Service Center) determined that Claimant was ineligible for UC benefits due to his willful misconduct, pursuant to Section 402(e) of the Law. Claimant appealed and a Referee hearing was held on November 14, 2017. Claimant appeared and testified, but Employer did not. On November 22, 2017, the Referee reversed the UC Service Center's Determination.

2

On December 7, 2017, Employer appealed to the UCBR and requested the hearing be reopened. On February 23, 2018, the UCBR ordered that the matter be remanded to the Referee to receive testimony and evidence on Employer's reason for its nonappearance at the previous hearing, and to receive testimony and evidence on the merits. On March 18, 2018, the Referee held a hearing at which Employer presented testimony and evidence. The UCBR subsequently ordered an additional hearing, which was held on April 30, 2018, to determine whether the Notice of Hearing was mailed from the Referee's office.

On June 26, 2018, the UCBR affirmed the Referee's decision granting Claimant UC benefits, finding that there was insufficient evidence to overcome the presumption that Employer received the Notice of Hearing. The UCBR declined to consider Employer's substantive evidence on the merits presented at the remand hearing, and concluded that Employer failed to meet its burden to establish willful misconduct. Employer appealed to this Court. On May 31, 2019, this Court held that, given the specific factual circumstances, the presumption did not apply to Employer. Accordingly, this Court reversed the UCBR's order and remanded the matter to the UCBR for consideration of the evidence Employer submitted concerning the merits of Claimant's appeal.[2] On August 20, 2019, the UCBR again affirmed the Referee's decision. Employer appealed to this Court.[3]

Initially, "[t]he issue of whether Claimant's conduct constituted willful misconduct under Section 402(e) of the Law is a question of law fully reviewable by

---

[2] *See Pinnacle Health Hosps. v. Unemployment Comp. Bd. of Review*, 210 A.3d 1127 (Pa. Cmwlth. 2019).

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

this Court." *Johns v. Unemployment Comp. Bd. of Review*, 87 A.3d 1006, 1010 (Pa. Cmwlth. 2014). This Court has explained:

> Although the Law does not define willful misconduct, it has been construed by our Court as: (1) the wanton or willful disregard of the employer's interests; (2) the deliberate violation of the employer's rules/directives; (3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; and (4) negligence demonstrating an **intentional disregard** of the employer's interest or the employee's duties and obligations. The employer bears the burden to prove that a discharged employee was guilty of willful misconduct.
>
> We note that mere incompetence, inexperience, or inability to perform a job generally will not support a finding of willful misconduct. However, **it is well-established that an employee's failure to work up to his or her full, proven ability, especially after multiple warnings regarding poor work performance, must be construed as willful misconduct because such conduct demonstrates an intentional disregard of the employer's interest or the employee's obligations and duties**.

*Scott v. Unemployment Comp. Bd. of Review*, 36 A.3d 643, 647-48 (Pa. Cmwlth. 2012) (footnote and citations omitted; emphasis added); *see also Gardner v. Unemployment Comp. Bd. of Review*, 454 A.2d 1208, 1209 (Pa. Cmwlth. 1983) ("Poor work performance reflecting an unwillingness to work to the best of one's ability is indicative of a disregard for the standard of conduct an employer has a right to expect and may rise to the level of willful misconduct.").

Further,

> '[w]here willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and [] the employee was aware of the rule. Once employer meets this burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule.'

4

*Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 482 (Pa. Cmwlth. 2018) (quoting *Weingard v. Unemployment Comp. Bd. of Review*, 26 A.3d 571, 574-75 (Pa. Cmwlth. 2011) (citation omitted)).

Employer argues that the UCBR failed to consider substantial record evidence establishing that Claimant engaged in willful misconduct by his repeated personal internet use during work time in violation of Employer's ECM policy, **and** his repeated medication errors.[4]

---

[4] In its brief to this Court, the UCBR argues that the basis for Claimant's discharge was excessive internet use, and not Claimant's repeated medication errors, given that "Employer's response to the [Department of Labor and Industry's (Department)] notice of application states only 'excessive non-work[-]related internet use on paid time[.]'" UCBR Br. at 8. The UCBR disingenuously and inaccurately characterizes the record evidence. On the same date and time that Employer filed its response to the Department's notice of application, it included Employer's completed Employer Questionnaire, which described the reasons for Claimant's separation as "**willful misconduct** . . . . **See attached conference record**[]." R.R. at 7a (emphasis added). Further, in response to the question, "Was there any misconduct involved in the claimant's unsatisfactory work performance[,]" Employer again referenced the conference record. R.R. at 8a. **The conference record, which memorialized Claimant's termination conference interview, describes repeated incidents involving Claimant's medication errors, Claimant's suspension resulting from a medication error, and Employer's attempts to correct Claimant's conduct by issuing Claimant an Action Plan, which was followed by additional medication errors while Claimant was using the internet**. After summarizing the medication errors, Employer explained that Claimant's employment was being terminated for both "**failure to meet the performance expectations of a Clinical Staff Pharmacist and violation of HR Policy #10 Electronic Communication Media**." R.R. at 10a (emphasis added).

The UCBR further justifies its conclusion that Claimant's employment was terminated only for his internet use by asserting that "Claimant's discharge came after Employer's management reviewed the IT reports on Claimant's internet use." UCBR Br. at 8. However, the record evidence reflects that Claimant's employment termination also came after his final medication error, which occurred during a time period in which Claimant had been using the internet to conduct a job search. *See* R.R. at 10a, 56a.

Although "it is well-settled that the [UCBR] is the final arbiter of fact and credibility in UC proceedings[,]" UCBR Br. at 9, the UCBR may not capriciously disregard record evidence. This Court has explained:

> An adjudication cannot be in accordance with the law if it is not decided on the basis of law and facts properly adduced; therefore, appellate review for the capricious disregard of material, competent evidence is an appropriate component of appellate consideration if such disregard is properly before the reviewing court. When

With respect to Claimant's internet use, the UCBR concluded that Employer failed to meet its burden of demonstrating Claimant's willful misconduct, reasoning that the Reports did not establish that Claimant was using the internet while on work time and not for work purposes, because Employer did not distinguish between sites Claimant actually accessed and embedded advertisements that registered as attempted site access. However, Claimant admitted that he was aware of the ECM Policy and that the ECM Policy provided for disciplinary action up to and including employment termination. *See* R.R. at 61a. Claimant acknowledged that he used the internet for personal reasons, *see* R.R. at 62a, and also **admitted** that he used the internet while working "in-between orders or in slow periods, I would check out news – the news or I would log on to a Pharmacist letter and do [continuing education] credits." R.R. at 20a.

Moreover, Employer presented evidence that, on August 10, 2017, Claimant was placed in an Action Plan to address his performance deficiencies which included his internet use. *See* R.R. at 129a, 132a. Specifically, the Action Plan stated, "[Claimant] has been noted to be using work computers, mobile phones, etc. to surf the internet." R.R. at 132a. With respect to Claimant's internet use, the Action Plan provided: "It is expected that [Employer's] resources will be used appropriately." R.R. at 132a. Claimant **admitted** that, at an August 17, 2017

---

determining whether the [UCBR] capriciously disregarded the evidence, the Court must decide if the [UCBR] deliberately disregarded competent evidence that a person of ordinary intelligence could not conceivably have avoided in reaching a particular result[] or[,] stated another way, if the [UCBR] willfully or deliberately ignored evidence that any reasonable person would have considered to be important.

*Jackson v. Unemployment Comp. Bd. of Review*, 933 A.2d 155, 156 n.4 (Pa. Cmwlth. 2007) (citation omitted). Here, the UCBR acted in the above-described manner when it disregarded Employer's evidence that Employer discharged Claimant for **both** his unauthorized internet use and his repeated medication errors.

meeting one week later, Employer discussed its concerns over Claimant's internet use. *See* R.R. at 62a; *see also* R.R. at 9a. At that meeting, Claimant signed the Action Plan acknowledging that its contents had been discussed with him. *See* R.R. at 130a. Despite Claimant's awareness of Employer's concerns over his internet use, Claimant **admitted** that his personal internet use continued during work time. *See* R.R. at 63a. In fact, Claimant **acknowledged** that the very next day, on August 18, 2017, he used the internet during work hours to search for jobs. *See* R.R. at 21a; *see also* R.R. at 10a. Employer presented evidence that Claimant's internet use on that date occurred immediately before and after Claimant's final medication error, ultimately resulting in his employment termination. *See* R.R. at 10a, 56a.

Despite Employer's unambiguous ECM Policy limiting personal internet use to non-work time, Claimant's repeated admissions that he used the internet during work time, even after Employer's warnings, and Employer's evidence establishing such use, the UCBR concluded that Claimant had not engaged in willful misconduct, reasoning: "While [Claimant] **admitted to** some occasional **use of the internet**, he denied the **extent** alleged by [Employer]. Notably, [Claimant] explained that **he only used the internet when work was slow or [in] between orders**." Employer Br., App. E at 4 (emphasis added).

This Court has recognized:

> '[**I**]t is contrary to reasonable standards of behavior for an employee to use company property for personal activities without authorization**, even absent a rule prohibiting such conduct.' *Smith v. Unemployment Comp*[.] [*Bd.*] *of Review*, . . . 508 A.2d 1281, 1283 ([Pa. Cmwlth.] 1986)[.] . . . **Using computers for personal, non-work purposes after being instructed not to do so amounts to willful misconduct**, *Baldauf v. Unemployment Comp*[.] [*Bd.*] *of Review*, 854 A.2d 689 (Pa. Cmwlth. 2004), and a lack of prior warnings 'is not a defense in willful misconduct cases' regarding admitted misconduct. *Placid*

7

> *v. Unemployment Comp*[.] *B*[*d.*] *of Review*, . . . 427 A.2d
> 748, 750 ([Pa. Cmwlth.] 1981).

*Pettyjohn v. Unemployment Comp. Bd. of Review*, 863 A.2d 162, 165 (Pa. Cmwlth. 2004) (emphasis added).

Here, Employer established the existence of the ECM Policy and its reasons for the ECM Policy, and Claimant acknowledged his awareness thereof.[5] Claimant also admitted to repeated conduct which violated the ECM Policy, and

---

[5]The UCBR asserts that Employer's work time internet prohibition is ambiguous because the policy "does not appear to be a categorical ban on personal internet use at all times, and Employer never explained through testimony what constituted 'worktime' or what level of use would be tolerated under this policy." UCBR Br. at 12-13. Notwithstanding, **Claimant did not assert that he was unclear as to what the policy meant**, and he admitted that his internet use included searching for jobs during a "slow period[.]" R.R. at 21a. Even after Employer warned him about his internet use during work hours, he claimed he continued to engage in personal internet activity because he "noticed that everybody else on the nightshift was using it." R.R. at 63a. Specifically, on August 18, 2017, both before and after he made a medication error, he was engaged in personal internet activity while a patient failed to get his/her prescribed medication. *See* R.R. at 56a.

The UCBR notes that Employer referenced Claimant's internet use as *excessive*, implying that Employer permitted some work time internet use. Relying on *Great Valley Publishing v. Unemployment Compensation Board of Review*, 136 A.3d 532 (Pa. Cmwlth. 2016), the UCBR proclaims that "[w]hen an employer discharges a claimant for conduct that is categorized as 'excessive' or 'egregious,' it must establish to what magnitude it will no longer accept such conduct, particularly when faced with evidence of past, similar and permitted acts." UCBR Br. at 14-15. However, the UCBR mischaracterizes the *Great Valley* holding. *Great Valley* is inapposite to the instant matter. Therein,

> [the e]mployer acknowledged that it tolerated [the] employees' violation of the computer/internet policy so long as their use was not excessive; [the e]mployer's policy did not define 'excessive' or differentiate between permissive and excessive computer usage; and [the c]laimant credibly testified that she believed her minimal usage was permissible under the policy as [the e]mployer enforced it.

*Great Valley*, 136 A.3d at 538-39.

In the instant matter, there is **no** evidence that Claimant was ever advised that he was permitted to use the internet during work time, but only that he could engage in "[o]ccasional, limited personal use during **non-work time**[,]" in accordance with the ECM Policy. R.R at 76a (emphasis added).

presented no justification for doing so.[6]  The UCBR's statement that Claimant "only used the internet when **work was slow** or [**in**] **between orders**" necessarily acknowledges that Claimant used the internet for personal reasons **during work time**.  Employer Br., App. E at 4 (emphasis added).  Thus, Claimant engaged in willful misconduct.  *See Sipps*.  Even absent the ECM Policy, pursuant to *Pettyjohn*, the record evidence unequivocally demonstrates Claimant engaged in willful misconduct by "[u]sing computers for personal, non-work purposes [during work time] after being instructed not to do so. . . ."  *Id*. at 165.  Accordingly, the UCBR's legal conclusion that Claimant had not engaged in willful misconduct is inconsistent with *Sipps* and *Pettyjohn*, and, therefore, the UCBR erred when it concluded that Claimant was eligible for benefits.[7]

> For all of the above reasons, the UCBR's order is reversed.


_____
ANNE E. COVEY, Judge

---

[6] Claimant argued that Employer was aware that other employees similarly used the internet; however, he offered no evidence of such, apart from his general conclusory testimony that Employer was aware of the use.  Notably, when asked why he did not approach Employer and ask why he was being singled out rather than just continuing to violate the ECM Policy, Claimant responded: "For no good reason."  R.R. at 63a.

[7] Having found that Claimant engaged in willful misconduct through his unauthorized internet use, this Court need not address whether Claimant's repeated medication errors constituted willful misconduct.  Notwithstanding, even if this Court had not held that Claimant's internet use constituted willful misconduct, it would hold that the UCBR erred because Employer clearly expressed to Claimant and the Referee that Claimant was also discharged for his repeated medication errors, and offered voluminous evidence and testimony in support thereof.  Notwithstanding, the Referee and the UCBR failed to consider and address whether Claimant's "failure to work up to his . . . full, proven ability, especially after multiple warnings regarding poor work performance . . . demonstrate[d] an intentional disregard of the employer's interest or the employee's obligations and duties" and, accordingly, constitutes willful misconduct.  *Scott*, 36 A.3d at 648.  This was error.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pinnacle Health Hospitals, :
                    Petitioner :
                              :
          v.                  :
                              :
Unemployment Compensation     :
Board of Review,              :    No. 1277 C.D. 2019
                    Respondent :

## O R D E R

AND NOW, this 5th day of June, 2020, the Unemployment Compensation Board of Review's August 20, 2019 order is reversed.

_____
ANNE E. COVEY, Judge